M. JOSEPHINE TAYLOR, Plaintiff in Error, v. THOMAS SHACKELFORD, Defendant in Error.

Kansas City Court of Appeals, June 29, 1908.

CONTRACTS: Another's Debt: Assumption: Evidence. The evidence relating to the transaction by which a partnership turned over its partnership property to the defendant and another, is reviewed and held insufficient to raise an issue of fact in regard to the question of whether the defendant individually assumed to pay the individual debt of one of the partners, since the evidence at most showed no other purpose than to pay the note out of the surplus proceeds of the partnership assets after the payment of its debts.

Error to Howard Circuit Court.—*Hon. Alexander H. Waller*, Judge.

132 App—31

Taylor v. Shackelford.

AFFIRMED.

*Dysart & Mitchell* and *Percival Birch* for plaintiff in error.

(1) The court should not, at the instance of defendant, have given the peremptory instruction to the jury to find for the defendant. The petition stated a cause of action, and the evidence sustained the petition. The evidence and every reasonable deduction therefrom must, in this case, be considered as absolutely true. Taylor v. Short, 38 Mo. App. 21; Ladd v. Williams, 104 Mo. App. 390, and cases cited; Pauck v. Beef & Pro. Co., 159 Mo. 467; James v. Insurance Co., 148 Mo. 1; Butts v. Bank, 99 Mo. App. 168; Baxter v. Transit Co., 103 Mo. App. 597. (2) Where a bill of sale stated a consideration but not the whole consideration which induced the sale, it was competent to supply by oral evidence the omission and show the additional consideration, if not inconsistent with that expressed in the original document. Nedvidek v. Meyer, 46 Mo. 600; Harrington v. Railway, 60 Mo. App. 227; Laudman v. Ingram, 49 Mo. 212; Bishop on Contracts Enlarged (Ed. 1887), sec. 75. (3) Where the grantee in a deed or contract promises for a consideration to pay the debt of the grantor, the grantee thereby becomes the principal and grantor his surety. The promise to pay the debt of the grantor may be proven by parole and it is not material that this contract is not signed the defendant. The acceptance of the contract by the defendant makes it for him a contract in writing binding him as if it had been signed by his own hand. His answer so acknowledges the law. Pratt v. Conway, 148 Mo. 291; Nelson v. Brown, 140 Mo. 580; Bensieck v. Cook, 110 Mo. 173; Fender v. Haseltine, 106 Mo. App. 28; Regan v. Williams, 185 Mo. 620; Railway v. Fisher, 125 Ind. 19; Ordway v. Downey, 18 Wash. 412; Don Yook v. Mill Co., 16 Wash.

459; 47 Pac. 964; 1 Jones on Mortgages (5 Ed.), sec. 750; Brandt on Suretyship and Guaranty, secs. 49, 53; Devlin on Deeds, sec. 1073; Fitzpatrick v. Hoffman, 104 Mich. 228, 62 N. W. 349. (4) When the defendant assumed the payment of this note, he stepped into the shoes of the maker of the note—assumed the note as it then was—an obligation certain in its terms as to amount, rate of interest, limitations. It was assumed by contract, December 6, 1895, and the last payment admitted to be made November 20, 1895, and 'the defendant then became the principal in said note. If the defendant is correct in his contention as to the five year limitation we would have an obligation outlawing as to principal sooner than the surety. "The ten year statute and not the five year statute applies in a case like this. Smith v. Davis, 90 Mo. App. 533; Fender v. Haseltine, 106 Mo. App. 28, and authorities cited; Bowenn v. Beck, 94 N. Y. 86; 1 Jones on Mortgages (5 Ed.), sec. 748. (5) The defendant's plea of a want of consideration will not avail him. H. E. Shackelford performed the whole of his part in the contract and turned over to the defendant over $14,000 of assets. No one contradicts this. Brandt on Suretyship and Guaranty, sec. 53; Hill Bros. v. Bank, 110 Mo. App. 230; Beardslee v. Morgner, 4 Mo. App. 139; Walther v. Merrell, 6 Mo. App. 370.

*Sam C. Major* and *W. M. Williams* for defendant in error.

(1) Plaintiff cannot sue upon one cause of action and recover upon another. The case must be determined in this court upon the same theory as that upon which it was tried in the court below. James v. Casualty Co., 113 Mo. App. 622; Hill v. Drug Co., 140 Mo. 433. (2) There is no evidence whatever of the contract alleged in the petition. Henry E. Shackelford at no time made any agreement to transfer his individual

interest in the partnership assets to defendant in consideration of an agreement by the latter to pay the Stops note. The evidence conclusively shows that there was no separate contract between Henry E. Shackelford and Thomas Shackelford about the transfer of Henry Shackelford's interest in the goods. There was an utter failure of evidence tending to prove the contract set up in the petition. Plaintiff must recover, if at all, upon the cause of action pleaded. Sumner v. Rogers, 90 Mo. 324; Traber v. Hicks, 131 Mo. 180; Carson v. Cummings, 69 Mo. 325. (3) The testimony shows that at the time of the transfer of the firm assets defendant, upon the representations made to him at the time, supposed there would be sufficient left, after the payment of the partnership debts assumed in the written contract, to pay the Stops note. When asked about this note, he did not say he would assume or become personally bound for its payment, but that it should be "protected, as there was plenty here." "He said there was plenty here to pay the note and it would be paid." Davis v. Dunn, 121 Mo. App. 490; Raithel v. Smith, 68 Mo. 258. (4) There is no evidence in the record that any assets were left after the payment of the partnership debts assumed in the written contract, or that there was ever any division of any of the goods between Thomas Shackelford and F. M. Colvin. Ellis v. Harrison, 104 Mo. 270; Davis v. Dunn, 121 Mo. App. 490; Bank v. Klock, 58 Mo. App. 335; Wheat v. Rice, 97 N. Y. 296; Crowe v. Lewing, 95 N. Y. 423; Dunning v. Leavitt, 85 N. Y. 30.

JOHNSON, J.—Action on a contract by the terms of which defendant is alleged to have assumed the payment of a debt owed by another person to plaintiff. The court peremptorily directed a verdict for defendant at the conclusion of the evidence offered by plaintiff, and plaintiff appealed.

Henry E. Shackelford and Cordell Colvin were

partners engaged in mercantile business at Glasgow, under the firm name of Shackelford & Colvin. Becoming embarrassed financially, they conveyed their partnership assets to Thomas Shackelford and Marion F. Colvin, on December 6, 1895, under the terms of the following written instrument: "In consideration that Thomas Shackelford and Marion F. Colvin have assumed to pay to the Glasgow Savings Bank the sum of sixty-five hundred and sixty-four, 59-100 dollars, evidenced by two promissory notes, each for one thousand dollars, executed by Thomas Shackelford and C. R. Brown as our security, one for one thousand dollars, executed by John H. Turner and W. F. Cunningham as security, two notes each for two thousand dollars executed by Thos. Shackelford and Marion F. Colvin as our security, and an overdraft for $191 to said bank and have also agreed to pay fifteen hundred dollars on our debts now due, we, Harry E. Shackelford and Cordell Colvin do hereby assign, transfer and deliver to said Thomas Shackelford and Marion F. Colvin all of our stock of groceries, queensware, hardware, stone, harness, plants and machinery of all kinds and all notes and accounts and notes and horse and delivery wagon and horse at Colvin in the store room corner of Commerce and First streets in Glasgow, provided, however, if any other creditors to whom we may owe for machinery, agricultural machines, plows or buggies, wagons and harness are willing to take back such goods at a fair price, then said Thomas Shackelford and M. F. Colvin shall pay such debts by transfer of such property at such price as shall be agreed upon not less than cost and carriage. The said Thomas Shackelford and Marion F. Colvin to have control and possession of said goods and all of our accounts and notes from this date to sell on their own account and collect for their own use.              H. E. SHACKELFORD,
"CORDELL COLVIN."

Thomas Shackelford was the uncle of Henry E. Shackelford and Marion F. Colvin was the father of Cordell Colvin and, as appears from the instrument, copied, both were sureties on obligations of the partnership. Henry E. Shackelford was indebted personally on a promissory note of $1,000, held by his mother-in-law, of which plaintiff became the owner and holder before the commencement of this action. After describing the note, the petition alleges "and in the purchase price of the interest of H. E. Shackelford in the said stock of goods and business and accounts of the said firm of Colvin & Shackelford, the defendant, Thomas Shackelford, assumed and promised to pay the note above described, given by the said H. E. Shackelford to Margaret Stops, and afterwards assigned to this plaintiff and now owned by this plaintiff; that the interest of the said H. E. Shackelford in the stock of the said goods, wares and merchandise and the accounts due his said firm was all of the property then owned by the said H. E. Shackelford; that at the date, to-wit, the 3d day of December, 1895, his whole interest therein was turned over to the defendant herein, at the time that defendant assumed to pay the said note; that the defendant received the interest of the said H. E. Shackelford, in the said goods, wares and merchandise and accounts due the said firm, and appropriated the same to his own use."

No mention of this indebtedness or of the alleged agreement to assume its payment appears in the bill of sale, but it is contended by plaintiff that at the time of the execution of that instrument, Thomas Shackelford orally promised his nephew to pay the debt, and this promise is made the foundation of the cause of action pleaded in the petition.

It appears from the evidence that at the time of the transfer all of the parties concerned thought the property conveyed exceeded in value the amount of the

partnership debts and that Henry E. Shackelford, as a partner, had an interest in the property of some value, but, as is quite common in such cases, this estimate fell wide of the mark, and the subsequent liquidation of the assets developed that they were insufficient to pay the partnership debts, and, therefore, that neither partner had an individual interest in them of any value. A witness testified that being interested as a creditor of the firm as well as a creditor of Henry E. Shackelford, he was present at the time of the transfer, and inquired about the provision made for his protection. He testified in part: "I told Henry Shackelford I didn't want him to sign the transfer papers and leave me out. Thomas Shackelford was called, and he said, 'I will see that paid,' that is the account which the firm owed me and the individual account against Henry, both of them. Henry Shackelford then said to Thomas Shackelford, 'What about Mrs. Stops (Henry's mother-in-law)?' Thomas Shackelford said, 'That will be protected.' When Thomas Shackelford said that, Henry Shackelford did not say anything, he just went and signed the contract." Henry E. Shackelford testified: "We were talking the matter over and I said: 'Uncle Tom, what about the note of Mrs. Stops, what about this note of Mrs. Stops,' and he said to me that should be protected as there was plenty here." "Q. He was going to protect it? A. That is what he said. He said there was plenty here to pay the note and it would be paid. . . . I don't remember what was said in the presence of John H. Turner by Thomas Shackelford. I think he said that the note would be protected. Something was said at the desk—I can't say exactly what it was. Thomas Shackelford said nothing else. About two years after that I was in the store and Thomas Shackelford said: 'Henry, I do not believe there is going to be enough of goods to pay that note,' and I said, 'You are a long time finding it out.'" On

cross-examination, the witness said: "When I was talking to Thomas Shackelford I said that if the note was not paid out of the property of Shackelford & Colvin that I would pay it myself if I got able; yes, sir, I said it."

This testimony states the substance of all the evidence offered in support of the allegation that defendant personally assumed the payment of the note, and we think it too weak to raise an issue of fact. Defendant did not promise unconditionally to pay the debt. In saying that the debt would be protected and that "there is plenty here to pay the note," he clearly expressed no other purpose than to pay the debt out of the surplus proceeds of the assets after the payment of the partnership debts. No such proceeds were realized and it is not shown that the property was wasted or misappropriated. It merely failed to pay out.

The judgment is affirmed.   All concur.